IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GREEN, *et ux.*,       :

    Plaintiffs,       :

v.       :       Case No. 1:14-CV-01913- RDB

WING ENTERPRISES, INC., *et al.*       :

    Defendants.       :

## MEMORANDUM OPINION

This is a products liability case alleging that Wing Enterprises, Inc. ("the Company"), manufactured the Little Giant ladder in a way that rendered it a defective and unreasonably dangerous product which amputated Plaintiff Christopher Green's ("Mr. Green") thumb as he was properly using it in a reasonably foreseeable way. (ECF No. 1 at 2). Judge Bennett referred the case to me for resolution of all discovery[1] disputes. (ECF No. 17). This Memorandum Opinion addresses Plaintiffs' Motion to Strike Defendant Wing's Purported Changes to His Deposition Testimony (ECF No. 26), Defendants' Opposition and Cross-Motion to Strike Questions (ECF No. 33), Plaintiffs' Reply and Opposition (ECF No. 34) and Defendants' Reply (ECF No. 35). Pursuant to Local Rule 105.6 (D. Md. 2014), I find that no hearing is necessary. For the following reasons Plaintiffs' Motion to Strike is GRANTED IN PART and Defendants' Cross-Motion to Strike Questions is DENIED to the extent that it seeks to strike deposition testimony in its entirety but GRANTED IN PART as to finding certain testimony non-binding on the Company.

---

[1] In their Reply, Defendants suggest that the pending Motions are not "discovery motions" and thus the "Rules relating to discovery motions are not applicable." (ECF No. 35 at 1). Presumably this refers to our Local Rules governing discovery disputes. In any event, given that the instant motions address the deposition process, it is my belief that the nature of the motions and the relief sought do fall within the scope of disputes referred to me. *See e.g. Wyeth v. Lupin Ltd.*, 252 F.R.D. 295 (2008). Of course, should the parties object to my findings they will have an opportunity to seek review of this Memorandum Opinion pursuant to Local Rule 301.5 (D. Md. 2014).

I.      **FACTUAL AND PROCEDURAL HISTORY**

As stated above, this is a product liability case involving an alleged defect in the Company's Little Giant ladder. Specifically, Plaintiffs claim that while Mr. Green was standing on the ladder, "it suddenly and unexpectedly wobbled, causing him to lose his balance and start to fall" and that while he was not injured by the fall itself, "as he fell his left thumb became lodged in a designed, unguarded pinch point between the rails of the Ladder, and was forcibly ripped from his hand." (ECF No. 1 at 3). On September 30, 2014, pursuant to a notice issued under Federal Rule of Civil Procedure 30(b)(6), Plaintiffs took the videotaped deposition of the Company's corporate designee, Mr. Harold Arthur Wing ("Mr. Wing"). At the conclusion of the deposition, Mr. Wing elected to read and sign. On November 10, 2014[2], Mr. Wing submitted an errata sheet that purported to correct, clarify or simply change his answers to 38 different questions. Upon review of the errata sheet, Plaintiffs advised defense counsel that, in their view, seven of the changes "dramatically changes his sworn testimony to that which he and his might wish he had said" and thus would not be accepted. (ECF No. 26-1). Despite efforts to resolve this dispute among themselves, the Parties were unable to do so. Accordingly, Plaintiffs filed the instant Motion to Strike Defendant Wing's Purported Changes to His Deposition Testimony (ECF NO. 26-1) and requested that the seven identified changes be stricken. In their opposition, Defendants cross-motioned for an order striking "all questions and answers outside the scope of the [topics identified in the Notice to take Mr. Wing's deposition]." (ECF No. 33 at 15). Interestingly, this request sought to strike the seven answers that are the subject of Plaintiffs' Motion in addition to nine additional questions and answers to which Mr. Wing had already submitted changes via his errata sheet that have not been objected to by Plaintiffs.

---

[2] While Plaintiffs initially objected to the timeliness of the submission of Mr. Wing's errata sheet, they have since withdrawn that objection. (ECF No. 34 at 4).

## II.     LEGAL ANALYSIS

### A. Changes that materially alter and/or contradict Mr. Wing's deposition testimony will be stricken.

Federal Rule of Civil Procedure 30 permits a deponent to review his or her deposition transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed.R.Civ.P. 30(e)(1).  While it is clear that courts are split as to the meaning and scope of substantive changes contemplated by the Rule, the growing minority (which has been recognized and applied in this Court) do impose some limitations on the extent to which a deponent can substantively change his or her testimony.  *See Wyeth v. Lupin Ltd.,* 252 F.R.D. 295 (2008); *see also Harden v. Wicomico County*, 263 F.R.D. 304 (2009). This line of reasoning interprets the rule as foreclosing changes that materially alter the testimony or contradict the testimony.  *Wyeth*, 252 F.R.D. at 296.  In this regard, where the proposed changes do not correct misstatements or clarify existing answers but instead materially change the answers or fully supplant them, such changes will be stricken and the deponent will be barred from utilizing the revised testimony at trial.  *See id.* at 297.  Specifically with respect to this case, in this Court's opinion, proposed changes that substitute lengthy general discussions reasserting the purported safety of the product or misuse by Mr. Green for the previous concise responses by Mr. Wing require particular scrutiny.

Other considerations relevant to determining whether to strike a deponent's proposed changes include the adequacy of the reason provided and the prejudice of striking the correction. *See Harden*, 263 F.R.D. at 307.  Specifically with respect to the reason provided for the changes it is well established that they cannot be conclusory.  Rather, the reason must provide a substantive explanation of specifically what led him to change his answer.  *Id.* Finally, it is important to consider the prejudice caused by denying a deponents attempt to modify his answer.

*Id.* at 309.  In this regard, where a timely objection was noted to the question itself (which would permit the deponent to move to exclude his answer if it is shown to be substantively inadmissible) or where the opportunity exists for the deponent to offer an explanation at trial to mitigate the effects of his answer, there is arguably little to no prejudice in striking the proposed change.  *See id.*

Based on this reasoning I will examine each of the seven purported changes Plaintiffs seek to strike and weigh the factors to determine if such relief is appropriate:

### Disputed Change No. 1: Page 32 Lines 9-17

| Original Testimony | Purported Changes |
|---|---|
| Q. Do you know whether there was a confidentiality clause in the settlement agreement?<br>**A. I don't know for certain, but I would be disappointed if there wasn't.**<br>Q. Why would you be disappointed if there weren't a confidentiality clause in the settlement agreement?<br>**A. Because in most good legal work that's part of what's done.** | Q. Do you know whether there was a confidentiality clause in the settlement agreement?<br>A. I don't know~~, but I would be disappointed if there wasn't.~~<br>Q. Why would you be disappointed if there weren't a confidentiality clause in the settlement agreement?<br>A. ~~Because in most good legal work that's part of what's done.~~ **Before we began working with Risk Retention Services, our attorneys recommended always using a confidentiality clause.  Since that time, we rarely use that clause.  As it was explained to me, the settlement agreement with a confidentiality clause is rarely effective, and while almost all settlements are made by insurers (without regard to the fact that the product was not defective), good investigation by plaintiff lawyers will find out that there was a settlement.  A confidentiality clause can therefore cause more harm than good and is rarely employed.  I do not know if the Opshinsky release had a confidentiality clause.** |
| **Reason Provided** ||
| Settlements are unusual, and I was recalling the period of time from 2003.  The issue was not included in the topics to be discussed by the witness appearing on behalf of the corporation.  We had limited, without objection, the responses to discovery to the summons, complaint, or first ||

| |
|---|
| written notice from any claimant alleging that any body part got stuck between the inner and outer of the rung, but I did not pull and look at each file in more depth. |

Preliminarily, there is an inherent logical problem with the proposed changes. Mr. Wing seeks to strike his testimony that he "would be disappointed if there wasn't [a confidentiality clause in the settlement agreement]." However, without that response, the follow up question as to why he would be disappointed cannot logically flow. As to the additional testimony—to replace Mr. Wing's explanation "[b]ecause in most good legal work that's part of what's done"—that language obviously contradicts or materially changes the testimony. Specifically, the proposed testimony changes the answer from suggesting that Mr. Wing assumes that if the settlement agreement was a product of "good legal work" it would have contained a confidentiality clause to the exact opposite position (i.e. that since working with Risk Retention Services the Company no longer implements confidentiality clauses because of the belief that they do more harm than good). The justification for the change, in essence, is that Mr. Wing was incorrect, at least as to what terms were included in more recent settlement agreements brokered by the Company's third-party administrator, Risk Retention Services. The proposed change completely rewrites his answer from what it was to what it should have been at least as to more recent settlements. But correcting this error after the fact as to more recent settlements is insufficient justification for the detailed substantive change offered here, and Mr. Wing can certainly explain his error on the stand at trial with a minimum of prejudice. Accordingly, this purported change will be stricken and the original testimony will remain.

**Disputed Change No. 2: Page 68 Lines 9-14**

| Original Testimony | Purported Changes |
|---|---|
| Q. So basically, if I understand what your line of thinking is, if it doesn't happen to enough people, it's not an accident hazard?<br>MR. SLY: Objection to form. You can | Q. So basically, if I understand what your line of thinking is, if it doesn't happen to enough people, it's not an accident hazard?<br>… |

| | |
|---|---|
| answer.<br>A. No.  There's lots of things that can happen with common products that we live with every day.  I mean, I could slam my hand in a car door, but we all continue to have car doors on our doors – on our cars every day.  So I'm still waiting for the hand-proof door to exist. | A. No.  There's lots of things that can happen with common products that we live with every day.  I mean, I could slam my hand in a car door, but we all continue to have car doors on our doors – on our cars every day.  So I'm still waiting for the hand-proof door to exist.  **In the case of these ladders, they are designed to minimize the risk of a person falling.  They have an extra wide base, to add stability on the top and bottom of the ladder.  One of the biggest causes of ladder accidents is using the wrong tool. For the job, and this ladder addresses that issue by being both a stepladder and a straight ladder, and by the fact that it goes to various heights, so the ladder is neither too short, nor too tall, which can also be a problem.  Our focus is on preventing injuries.  And when used according to instructions, we believe that it is the safest ladder on the market.  This does not prevent a person from falling from the ladder, in a hurricane or otherwise, and if they fall they can be hurt.  Sometimes seriously.  But the ladder is intended as a climbing device, a fall prevention device.  It is not designed or intended as a fall protection device.** |
| **Reason Provided** ||
| The answer, as given, was incomplete. ||

The Court concedes that the additional language proposed by the change does not contradict Mr. Wing's testimony, but it does significantly supplement it in a way that materially alters it. Moreover, neither the reason provided nor the text of the change provides an explanation for the change. The question sought to determine whether Defendants took the position that a particular number of injuries needed to be seen before considering whether an accident hazard existed. In this regard, the new answer is not any more responsive than the original analogy that Mr. Wing provided; general assertions regarding the overall safety of the ladder and the intention of the design are not relevant to the question which asks whether there is a minimum number of

6

incidents that Defendants consider necessary before considering whether a hazard exists. Additionally, Defendants are not prejudiced if the change is disallowed as the original answer does not foreclose or contradict a question on direct at trial aimed at extolling the overall safety of the ladder. Accordingly, this purported change will be stricken and the original testimony will remain.

**Disputed Change No. 3: Page 72 Lines 13-14**

| Original Testimony | Purported Changes |
|---|---|
| Q. Mr. Wing, is there some number of people, from your perspective, who would have to lose a digit in that V-shaped area before Wing would recognize that as a hazard that needs to be addressed?<br>**A. We do not have a mathematical equation or an algorithm that says when X happens, we do this.** | Q. Mr. Wing, is there some number of people, from your perspective, who would have to lose a digit in that V-shaped area before Wing would recognize that as a hazard that needs to be addressed?<br>A. No. |
| **Reason Provided** ||
| From the answer (begged by the question), it appears as if there may be some consideration as to the number of people who would need to be hurt in order to be sufficient to result in a design change. Defendant is always improving its product, to make it more user friendly, safer, and more functional. It is not a question of how many injuries is too many. It is an issue of addressing the safety and functionality of the climbing tool. ||

The Court concedes that the proposed change does not contradict or materially alter Mr. Wing's testimony. Further, the Court is satisfied with the reason provided as it explains precisely that Mr. Wing is concerned that his answer could be misconstrued and why such an interpretation would be wrong. The Court understands Plaintiffs' position that if Mr. Wing's testimony did indeed suggest that there may be some consideration as to the number of people who would need to be hurt in order to be sufficient to result in a design change, then "it would constitute a significant admission that Wing cannot simply withdraw." (ECF No. 26-1 at 10). However, it is precisely this type of confusion that Defendants are seeking to prevent with the proposed change.

7

In light of the fact that the change doesn't contradict or materially alter the testimony and instead clarifies it, the change will be permitted.

### Disputed Change No. 4: Page 74 Line 9-16

| Original Testimony | Purported Changes |
|---|---|
| Q. So how many people, in your view, speaking as Wing's representative, do have to lose digits in this area before Wing would consider what would be involved in guarding that area so it doesn't happen to someone else?<br>MR. SLY: Objection to the form.  Foundation.<br>**A. I don't know.** | Q. So how many people, in your view, speaking as Wing's representative, do have to lose digits in this area before Wing would consider what would be involved in guarding that area so it doesn't happen to someone else?<br>...<br>**A.** ~~I don't know.~~ **I cannot answer that question as phrased.  On every ladder, there are places you can catch yourself when you fall.  And if you do not catch yourself, you fall all the way to the ground, which can be at least as bad as getting a body part stuck.  There are spaces between the front and back section of any extension ladder, including ours, there are cross braces and angle braces.  These are all necessary for the strength and stability required for a safe ladder.  The product is reasonably safe, extraordinarily safe, because it prefects accidents.  It does not make it safe to fall from a ladder, which by definition, is a bad thing.  Falling from ladders is dangerous, hazardous, and can lead to serious injuries or death, whether you get caught in a part of the ladder or fall all the way to the ground.  Therefore, our focus is on preventing injuries.** |
| **Reason Provided** ||
| *None.* ||

Preliminarily, Mr. Wing has not provided any explanation for his change, but presumably is similar to the one offered for the previous change—that the question and the answer as phrased implies that that Defendants may have a minimum injury threshold.  Modifying the answer from "I don't know" to, in effect, "I don't know how to answer that as phrased," does not wholly contradict the original answer and does prevent the same confusion that was a concern above.

8

Therefore, the Court will allow the change from "I don't know" to "I cannot answer that question as phrased."  As to the remainder of the proposed new answer however, Defendants offer no reason why the Court should allow the addition of general discussion touting the ladder's safety and the Company's focus on preventing injuries.  Accordingly, this portion of the purported change will be stricken and the original testimony will remain.

### Disputed Change No. 5: Page 96 Lines 3-6

| Original Testimony | Purported Changes |
| --- | --- |
| Q.  So you're telling us you don't agree that in order to comply with ANSI standards, ladders must be designed without accident hazards? You don't agree with that?<br>**A. I would say you'd have to drill down and specifically – we'd have to talk about what that compromises.** | Q.  So you're telling us you don't agree that in order to comply with ANSI standards, ladders must be designed without accident hazards? You don't agree with that?<br>A. ~~I would say you'd have to drill down and specifically – we'd have to talk about what that compromises.~~ **The question is loaded. ANSI has identified the fact that most ladder accidents occur as a result of user misuse.  Thus, to the extent possible, those are addressed.  Our ladders go further than ANSI requires, but, for example, a major cause of ladder accidents is a person over-reaching while on a ladder.  This can cause the user to fall.  In order to address this, ANSI has instituted stability requirements for ladders.  The design of the base sections of our ladders go further.  They are even wider than required, to make them more stable.  However, a user can overcome this design by reaching even further outside the ladder rails, and fall.  ANSI requires that the ladder user use the correct sized ladder.  Otherwise he will often, for example, stand on the top cap of a stepladder, which is very dangerous indeed.  Our ladders are adjustable in height, so that this danger is minimized.  But at some point, he will still reach the highest point on the ladder.  If he stands on the top cap, he risks severe injury.**<br><br>**There is always a risk when climbing above the ground level that the user will lose his** |

| | |
|---|---|
| | balance and fall.  What ANSI does, and what we do above ANSI requirements, is to try to minimize the risk of such injuries.  Neither ANSI nor Wing Enterprises, Inc. nor any other ladder manufacturer, can ever do, is guaranty that the user will not ever have an accident.  Climbing always, in every instance, involves the risk of falling.  But without ladders, users will use chairs, or boxes, or something else to reach heights.  What we do, what ANSI does, is try to minimize the risk of falling.  This includes warnings.  This includes instructions.  And this includes making the design such that the risk of injury is minimize. |
| **Reason Provided** ||
| It was clear from the follow-up questions that the plaintiff's attorney mis-understood previous responses, and my response to this question, and therefore, I now provide a complete response to the question. ||

While Mr. Wing's proposed change does not contradict his testimony, it does materially change it.  Specifically, the original response merely suggests that Mr. Wing cannot say—without *drilling down* on what compromises may result (presumably in product performance)—that to comply with ANSI standards, ladders must be designed without accident hazards.  The proposed change deletes that answer and replaces it with a long general discussion of misuse, inherent risks and minimization of risks without relating it directly to the question and original answer.  The answer also does not foreclose or contradict trial testimony encompassing the general discussion Defendants assert in their modified answer such that there is no prejudice to denying the change.  Accordingly, this purported change will be stricken and the original testimony will remain.

### Disputed Change No. 6: Page 140 Line 20

| Original Testimony | Purported Changes |
|---|---|
| Q.  Okay.  Well, I'm trying to just explore the factual basis of your assertion about your 40 years of history – | Q.  Okay.  Well, I'm trying to just explore the factual basis of your assertion about your 40 years of history – |

| | |
|---|---|
| A. Right<br>Q. – allows you to come to the assumption or leads you to the assumption that Mr. Green was doing something wrong. So you said – you indicated two issues that apparently arise from your 40-year history. One is the digit. That is to say, I guess you're talking about Mr. Green's thumb –<br>**A. Yes.**<br>Q. – that became entrapped in that V-shaped area?<br>**A. Yes.** | A. Right<br>Q. – allows you to come to the assumption or leads you to the assumption that Mr. Green was doing something wrong. So you said – you indicated two issues that apparently arise from your 40-year history. One is the digit. That is to say, I guess you're talking about Mr. Green's thumb –<br>**A. Yes.**<br>Q. – that became entrapped in that V-shaped area?<br>**A.** ~~Yes.~~ **Well, you asked two questions, so let me answer the first one first. The ladder in question was not defective. As far as I know the ladder was built to specifications, and the design is reasonably safe, indeed, safer than most ladders built. In fact, as I recall your complaint in this case, you do not allege a defect that caused the plaintiff to fall. But your client did fall. Well, if the ladder did not cause your client to fall, and your client did fall, then either it was simply an accident, or he did something wrong. I was not there, but it is simple logic.**<br><br>**Now, about the thumb, I have not been able to figure out how the plaintiff got his thumb stuck. When you lose your grip on the ladder, my thinking is that you would have your hands either vertically finger tips up, trying to grab the ladder (in which case your thumbs do not come close to entering the space, or horizontally, in which case the thumbs are furthest from the space. It is simply a strange scenario that I have not figured out. However, I am not saying it did not happen, it is clear that the accident did occur. Defendant does not know how it happened, I do not know how it happened.** |
| **Reason Provided** ||
| The question was a multiple question, which I was not permitted to answer. Further, trying to explain that plaintiff's accident was not one of the topics listed for interrogation of the corporate representative. ||

11

Again, while Mr. Wing's proposed change does not contradict his testimony, it does materially change it to the extent it inserts a general discussion of the ladder's safety and lack of defect. A review of the deposition testimony from pages 138 through 141 reveals that only one question was asked and that question related to Mr. Wing's assumption that Mr. Green improperly used the ladder because it was his thumb that was injured in the fall. (ECF No. 26-3 at 36). Therefore, the first paragraph of Mr. Wing's change (relating to whether the ladder was defective) is a material change not supported by the reason provided. As to the second paragraph, that change does not contradict the original response of "yes" but does offer further clarification as to why Mr. Wing may assume that Mr. Green did something wrong because his thumb was injured. While this reason was not stated by Mr. Wing it is evident in the text of the change and will be permitted for that purpose.

### Disputed Change No. 7: Page 146 Line 12

| Original Testimony | Purported Changes |
| --- | --- |
| Q. Okay. So based upon your review of Mr. Green's deposition, Mrs. Green's deposition, did you seen anything that led you to believe that Mr. Green was using the ladder in some improper way?<br>MR. SLY: Same objection. Asked and answered multiple times.<br>**A. Other than my opinions, no.** | Q. Okay. So based upon your review of Mr. Green's deposition, Mrs. Green's deposition, did you seen anything that led you to believe that Mr. Green was using the ladder in some improper way?<br>….<br>**A.** ~~Other than my opinions, no.~~ **As I think I said in response to a previous question, the ladder was set up in the dark. The ladder was not inspected. The claimant did not say he dried his feet. More importantly, there is no defect alleged or testimony of any defect by either of them, that any defect in the ladder caused the fall. That is, Mr. Green did not feel movement in the ladder, or break in the ladder, causing him to fall. He just fell.**<br><br>**As I have explained previously, we therefore know that the ladder did not cause him to fall. That leaves two logical alternatives.** |

|  | **One, Mr. Green did something that caused him to fall; or two, it was simply an accident that can occur any time you are above the ground.** |
|---|---|
|  | **I was not present, I do not know what happened. And I cannot explain what did happen – there is not a defect in the product that caused the plaintiff's injuries, and there were no misrepresentations in any QVC program about the safety of the product. When used properly, it is the safest ladder available.** |
| **Reason Provided** ||
| The question posed was outside the list of topics for interrogation at this deposition. ||

While Mr. Wing's proposed change does not contradict his testimony, it does materially change it by replacing a simple statement that none other than his (previously offered) opinions lead him to believe that Plaintiff was using the ladder in an improper way with a full description of the basis for his opinions—which the answer concedes has been explained elsewhere in the deposition. Further, the reason stated does not provide any explanation for the changes and the text of the change itself merely suggests that Mr. Wing wanted to provide more support for his answer. There is also nothing in the original answer that forecloses or contradicts trial testimony along the lines offered in the revised answer if, as suggested in Defense counsel's objection, these reasons were offered previously in the deposition such that no prejudice will result from denying the change. Accordingly, this purported change will be stricken and the original testimony will remain.

      **B.**    **There is no basis to strike any of Mr. Wing's testimony, however to the extent that the questioning was outside the scope of the Rule 30(b)(6) Notice testimony arising therefrom will not bind the Company.**

Defendants seek to strike certain questions and answers—that they initially revised via the errata sheet and some of which Plaintiffs have chosen not to object to—on the ground that

the questions went beyond the scope of the deposition notice.[3] (ECF No. 33 at 15). As a preliminary matter, Defendants have failed to cite and this Court is not aware of any legal precedent authorizing Defendants to strike the testimony of Mr. Wing. Further, the scope of a Rule 30(b)(6) deposition has not been directly addressed in the Fourth Circuit. *See E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98-99 (2012). It has however been established that a "deponent's answers to questions outside the scope of the notice will not bind the organization." *Id.* at 99. In this regard, the proper course to take when a deponent is asked a question outside the scope of the notice is to "object that the question [is] outside the scope of the 30(b)(6) notice, and state on the records that the answer would not bind the [organization]." *Id.* In light of this precedent this Court takes the position that the scope of the questioning at a Rule 30(b)(6) deposition is governed by relevancy under Rule 26(b)(1) and not limited to the notice; but to the extent the questioning is beyond the scope of the notice the testimony will constitute that of the deponent in an individual capacity and not on behalf of his organization.[4] *See e.g. K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, No. CV–08–243–RMP, 2010 WL 1568391, at *2 (E.D.Wash. Apr. 14, 2010) ("[D]istricts in the Ninth Circuit have concluded that once the witness satisfies the minimum standard for serving as a designated witness, the scope of the deposition is determined solely by relevance under Rule 26.") (internal quotation marks omitted); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y.2009) ("[A] notice of deposition ... constitutes the minimum, not the maximum, about which a deponent must be prepared to speak.") (internal quotations omitted); *Cabot Corp. v. Yamulla Enterprises, Inc.*, 194 F.R.D. 499, 500 (M.D.Pa.2000) ("I do not read Rule 30(b)(6) as carving out a special limitation on the scope of

---

[3] The Court recognizes Plaintiffs' argument that Defendants' Motion should be denied for failure to follow the rules relating to resolving discovery disputes, however, because Defendants' Motion is collateral to Plaintiffs' Motion the Court will not deny it on that basis.
[4] The Court recognizes that in this case the distinction may not make much of a difference as Mr. Wing is the President and majority shareholder of the corporation.

14

discovery defined in Rule 26(b)(1)"); *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D.Fla.1995) ("Rule 30(b)(6) does not limit what can be asked at deposition.").

Defendants filed a Motion to Strike certain questions and respective answers—all of which Mr. Wing has already changed (or attempted to change) via his errata sheet—which they believe are beyond the scope of the notice. As stated above, there is no basis to strike the deposition testimony on the grounds that it was beyond the scope of the notice. Accordingly, the only issue to be resolved is whether the testimony went so far beyond the scope of the notice that it should not bind the Company. In this regard it is important to emphasize that the scope of a Rule 30(b)(6) notice should not be read so narrowly as to prevent the deposing party from probing and scrutinizing a deponent's answers. *E.E.O.C. v. Freeman*, 288 at 99. Upon review of the disputed testimony this Court makes the following findings:

1. **Page 32 Lines 9-17** asks "[d]o you know whether there was a confidentiality clause in the settlement agreement?" and "[w]hy would you be disappointed if there wasn't?" (ECF No. 26-3 at 9). No objection as to scope was made to the question during Mr. Wing's deposition and Mr. Wing did not cite such an objection as a reason for his proposed change in his errata sheet. (ECF No. 26-5 at 2). Regardless of whether an objection as to scope was preserved, however, this inquiry falls within the scope of Topic 6, "[c]laims that have been asserted against Wing Enterprises arising from injuries allegedly arising from use of the type of ladder or similar ladder… and the *disposition* of the claim." (ECF No. 26-2 at 4) (emphasis added). Accordingly, the deposition testimony will stand and be binding on the Company.

2. **Page 68 Lines 3-14** asks "[s]o basically, if I understand what your line of thinking is, if it doesn't happen to enough people, it's not an accident hazard" (ECF No. 26-3 at 18); **Page 72 Lines 8-14** asks "Mr. Wing, is there some number of people, from your

perspective, who would have to lose a digit in that V-shaped area before Wing would recognize that as a hazard that needs to be addressed?" (ECF No. 26-3 at 19); and **Page 74 Lines 9-16** asks "[s]o how many people, in your view, speaking as Wing's representative, do have to lose digits in this area before Wing would consider what would be involved in guarding that area so it doesn't happen to someone else" (ECF No. 26-3 at 20).  No objection as to scope was made to the question during Mr. Wing's deposition and the reason for the proposed change in his errata sheet does not refer to the inquiry as being outside the scope of the notice.  (ECF No. 26-5 at 7-8).  Regardless of whether an objection as to scope was preserved, however, these inquiries fall within the scope of Topic 1, "[t]he design of the type of ladder at issue in this case, including all decisions with respect to alternative designs, and including consideration of the existence and mitigation of any risks inherent in the design" (ECF No. 26-2 at 3) and Topic 8, "[e]ngineering consideration given to any alternative design or mitigation of the risk of injury inherent in the design of the type of ladder, or similar ladder" (ECF No. 26-2 at 4).  Moreover, as to the latter two questions, to the extent Mr. Wing was not prepared to answer them, any prejudice was corrected by the changes made via Mr. Wing's errata sheet that this Court permitted above.  Accordingly, the deposition testimony will stand and be binding on the Company.

   3. **Page 96 Lines 3-6** asks "[s]o you're telling us you don't agree that in order to comply with ANSI standards, ladders must be designed without accident hazards?  You don't agree with that?" (ECF No. 26-3 at 25).  No objection as to scope was made to the question during Mr. Wing's deposition and the reason for the proposed change in his errata sheet does not refer to inquiry as being outside the scope of the notice.  (ECF No. 26-5 at 10).  Similarly, **Page 63 Lines 4-6** asks "[w]hat are the applicable ANSI tests?" (ECF No. 26-3 at 17).  Again no objection as to scope was made at the deposition, but was the basis for the proposed change to

Mr. Green's answer via his errata sheet. (ECF No. 26-5 at 6). Regardless of whether an objection as to scope was preserved, however, these inquiries fall within the scope of Topics 1 and 8, as cited above. Further, as to the latter questioning, that testimony naturally flowed as a follow up to previous testimony and to the extent Mr. Wing was not prepared to answer that question, any prejudice was corrected by the changes Mr. Wing to made to his testimony via the errata sheet which Plaintiffs have not objected to. Accordingly, the deposition testimony will stand and be binding on the Company.

        4.     **Page 140 Lines 9-20** asks "[o]kay. Well, I'm trying to just explore the factual basis of your assertion that something about your 40 years of history…allows you to come to the assumption that Mr. Green was doing something wrong…" (ECF No. 26-3 at 36); and **Page 146 Lines 5-12** ask "[o]kay. So based upon your review of Mr. Green's deposition, Mrs. Green's deposition, did you see anything that led you to believe that Mr. Green was using the ladder in some improper way?" (ECF No. 26-3 at 38). When the line of questioning began counsel for Mr. Wing objected and explained that he did not believe misuse was within the topics listed in the notice, but did permit Mr. Wing to respond. (ECF No 26-3 at 34). Additionally, the reason stated by Mr. Wing for his proposed change to his testimony in this regard (some of which is being partially permitted by this Court) included a statement that the questioning was not within the topics. (ECF No. 26-5 at 15-16). The Court agrees that the questions were not within the scope of the topics listed and that Mr. Wing's counsel properly objected on the record and re-asserted his objection via the errata sheet. Therefore, the testimony will not be binding on the Company, but rather will be the testimony of Mr. Wing in his personal capacity.

**5.**     **Page 14 Lines 6-7** asks "[a]nd how long has Wing been working with Risk Retention Services?" (ECF No. 26-3 at 5); **Page 18 Lines 19-22** through **Page 19 Line 1** asks "[s]o when I, as a plaintiff's lawyer, ask Wing Enterprises for a claims history, you're telling me that Wing Enterprises has to ask Risk Retention Services to provide that history?" (ECF No. 26-3 at 6); and **Page 44 Line 22** though **Page 45 Lines 1-19** asks "[a]nd Risk Retention Services would have that deposition…[t]he one in the prior case in Utah…[w]ell, [Risk Retention Services] came into your office and took everything you had, right?...And they had no authority to destroy that stuff, did they?... So that would include destroying your records?" (ECF No. 26-3 at 13).  No objection as to scope was made at the deposition, but was the basis for the proposed changes to Mr. Green's answer via his errata sheet.  (ECF No. 26-5 at 1-3).  Regardless of whether an objection as to scope was preserved, however, this inquiry falls within the scope of Topic 6, "[c]laims that have been asserted against Wing Enterprises arising from injuries allegedly arising from use of the type of ladder or similar ladder, regardless of whether the claim resulted in a lawsuit, in which it was alleged that a person was injured as a result of a problem or defect in the type of ladder or similar ladder, including the date the claim was asserted, the person asserting the claim, the injury alleged and how it was alleged to have occurred, whether a lawsuit was filed and if so the full caption of the case and the identity of plaintiff's counsel, and the disposition of the claim."  (ECF No. 26-2 at 4).  Moreover, to the extent Mr. Wing was not prepared to answer those questions, any prejudice was corrected by the changes Mr. Wing made via his errata sheet which Plaintiffs have no objected to.  Accordingly, the deposition testimony will stand and be binding on the Company.

**6.**     **Page 49 Lines 11-17** ask "and someone makes a note of that call [from Mr. Mielecke making Defendant Green aware that he had lost a digit while using its ladder],

right?" (ECF No. 26-3 at 14); **Page 105 Line 14** asks "[S]o who is Mr. Brent Anderson?" (ECF No. 26-3 at 28); **Page 106 Lines 18-20** ask "[d]o you know that this case was produced by your counsel?" (ECF No. 26-3 at 28); and **Page 107 Lines 4-13** asks "[p]age 2, Paragraph 12 [of Mr. Anderson's Complaint alleges] that on October 16, 2007, he was attempting to descend the ladder when he caught the last two fingers of his left hand in the space between the stabilizing bar and the ladder step, and the process of trying to remove his fingers, slipped and fell and amputated his left fourth finger and lacerated other fingers on his left hand. You didn't know about this case?" (ECF No. 26-3 at 28). No objection as to scope was made at the deposition, but was the basis for the proposed changes to Mr. Green's answer via his errata sheet for all but the first question. (ECF No. 26-5 at 4, 11-12). Regardless of whether an objection as to scope was preserved, however, the Court finds that these questions fall within the scope of Topic 6 as quoted above and to some extent, Topic 5, "[i]njuries of which Wing Enterprises received or obtained notice, allegedly resulting from a user becoming caught or entangled in the v-shaped area between the ladder's rails in the type of ladder at issue in this case, or similar ladders" (ECF No. 26-2 at 3). Further, to the extent that Mr. Wing was not prepared to answer those questions, any prejudice has been resolved by the changes Mr. Wing made to his testimony via his errata sheet which Plaintiffs have not objected to. Accordingly, the deposition testimony will stand and be binding on the Company.

7.   **Page 114 Lines 2-5** asks "[a]s I understand it, Wing sold this ladder to QVC for about $129 a unit is that right?... Do you know that?" (ECF No. 26-3 at 30). No objection as to scope was made at the deposition, but was the basis for the proposed change to Mr. Green's answer via his errata sheet. (ECF No. 26-5 at 13). Regardless of whether an objection as to scope was preserved, however, the Court finds that this question falls within

N/A
N/A
N/A
N/A

Topic 19, "[a]ll documents related to the sale of the particular ladder at issue in this case." (ECF No. 26-2 at 5). Further, to the extent that Mr. Wing was not prepared to answer that question, any prejudice has been resolved by the changes Mr. Wing made to his testimony via his errata sheet which Plaintiffs have not objected to. Accordingly, the deposition testimony will stand and be binding on the Company.

### III.    CONCLUSION

For the foregoing reasons Plaintiffs' Motion to Strike Defendant Wing's Purported Changes to His Deposition Testimony is GRANTED as to Disputed Changes Nos. 1, 2, 5, and 7; GRANTED IN PART as to Disputed Change Nos. 4 and 6 and DENIED as to Disputed Change No. 3. It is further held that Defendants' Cross-Motion to Strike Questions is DENIED with the exception that Mr. Wing's testimony at Page 140, Line 20 (partly as modified by the errata sheet) and Page 146, Line 12 will not be binding on the Company.


February 5, 2015                                                            /s/
Date                                                                   J. Mark Coulson
                                                                       United States Magistrate Judge