IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GREEN, *et al.*,         *

    Plaintiffs,         *

    v.         *         Civil Action No. RDB-14-1913

WING ENTERPRISES, INC., *et al.*,         *

    Defendants.         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Christopher Green and Kathleen Green ("Plaintiffs" or the "Greens") bring this diversity action against Defendants Wing Enterprises, Inc. ("Wing Enterprises") and QVC, Inc. ("QVC") (collectively, "Defendants"), alleging a violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.*, and various tort and contract state law claims.[1] The Greens claim that Mr. Green suffered an "enhanced injury"[2] when using Defendant Wing Enterprise's product, the "Little Giant" ladder.

Presently pending are Defendants' Motion to Exclude Evidence and Plaintiffs' Expert Witness Testimony (ECF No. 45); Plaintiffs' *Daubert* Motion to Preclude Testimony

---

[1] This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount-in-controversy requirement is satisfied. *See* Compl. ¶¶ 1, 3-5, ECF No. 1. None of the parties disputes that Maryland law governs Plaintiffs' claims.

[2] Under Maryland law, a manufacturer may be liable under strict liability or negligence theories for an "enhanced injury"—an injury stemming from a manufacturing or design defect where the defect did not cause the accident, but caused or enhanced the injury suffered. *See, e.g., Volkswagen of America v. Young*, 321 A.2d 737 (Md. 1974). The underlying accident must be foreseeable to trigger "enhanced injury" liability. *See Nicholson v. Yamaha Motor Co., Ltd.*, 566 A.2d 135, 144-45 (Md. Ct. Spec. App. 1989) (applying the "crashworthiness" or "enhanced injury" doctrine to foreseeable accidents while riding a motorcycle).

1

of Defense Expert Thomas Bayer (ECF No. 46); Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53); Defendant QVC's Motion for Partial Summary Judgment Regarding Count IV (ECF No. 54); Defendant QVC's Motion for Partial Summary Judgment as to Plaintiffs' Consumer Protection Act Claim (ECF No. 55); and Defendant QVC's Motion for Summary Judgment Regarding Sealed Container (ECF No. 56). This Court will address the evidentiary motions (ECF Nos. 45 & 46) and Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53) at a *Daubert* hearing[3] scheduled for December 3, 2015. The parties' submissions with respect to the remaining motions (ECF Nos. 54, 55, & 56) have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant QVC's Motion for Partial Summary Judgment Regarding Count IV (ECF No. 54) is DENIED; Defendant QVC's Motion for Partial Summary Judgment as to Plaintiffs' Consumer Protection Act Claim (ECF No. 55) is DENIED; and Defendant QVC's Motion for Summary Judgment Regarding Sealed Container (ECF No. 56) is DENIED.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). This product liability action arises out of Mr. Green's fall and subsequent injury while

---

[3] *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993).

2

using the "Little Giant" ladder (the "Ladder), a product manufactured by Wing Enterprises.[4] On May 4, 2009, Mrs. Green saw the Ladder advertised on QVC. Compl. ¶ 6, ECF No. 1. QVC, a Delaware corporation with its principle place of business in West Chester, Pennsylvania, is a national television network specializing in televised home shopping. *Id.* ¶ 5. Mrs. Green allegedly decided to purchase the Ladder due to the "demonstrations and representations QVC made concerning the Ladder and its alleged quality and safety." *Id.* The Ladder arrived "new in the box" at the Greens' residence in Maryland shortly thereafter. *Id.* ¶ 7. The Greens allege that the "Ladder was in the same condition when it arrived at their home as it was in when it left Defendant Wing [Enterprise]'s control." *Id.*

On August 27, 2011, Mr. Green used the Ladder to close a second-story window during a storm. *Id.* ¶ 8; *see also* Mem. in Supp. of Def. QVC's Mot. for Partial Summ. J. Regarding Count IV, 2, ECF No. 54-1. He suddenly fell from the Ladder.[5] Compl. ¶ 8; *see also* Mem. in Supp. of Pls.' *Daubert* Mot., 3, ECF No. 46-1. As he fell, Mr. Green's thumb became lodged at the point on the Ladder where the flared outer rail meets the straight inner rail, forcibly removing the thumb from his hand. Compl. ¶ 8; *see also* Mem. in Supp. of Def. QVC's Mot. for Partial Summ. J. Regarding Count IV, at 2. After doctors determined that the thumb could not be reattached, they amputated Mr. Green's toe and fashioned it into an approximation of a thumb. Compl. ¶¶ 10-11.

---

[4] Wing Enterprises is a Utah corporation with its principle place of business in Springvale, Utah. *Id.* ¶ 4.
[5] Plaintiffs admit in their *Daubert* Motion to Preclude Testimony of Defense Expert Thomas Bayer (ECF No. 46) that, due to insufficient information, they do not assert that the *Ladder* caused Mr. Green's fall. Mem. in Supp. of Pls.' *Daubert* Mot., 3, ECF No. 46-1.

Plaintiffs subsequently filed this "enhanced injury" product liability action, arguing that the Ladder manufactured by Wing Enterprises and sold by QVC was defective and unreasonably dangerous. As an "enhanced injury" suit, Plaintiffs do not allege that Mr. Green's fall caused the injuries in question. Rather, the Greens contend that Mr. Green suffered a secondary injury—the amputation of his thumb—due to the unreasonably dangerous nature of the Ladder. Specifically, the Greens assert that the open "V" between the Ladder's central structure and the diagonal support arms constitutes a design defect. The Greens assert six specific claims: strict liability against both Defendants (Count I); negligence against both Defendants (Count II); breach of warranty against both Defendants (Count III); misrepresentation against QVC (Count IV); violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.*, against QVC (Count V); and loss of consortium against both Defendants (Count VI).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). In so doing, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation

5

or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

**A. QVC's Motion for Partial Summary Judgment—Count IV**

Count IV of the Complaint,[6] directed solely against Defendant QVC, alleges that Mrs. Green chose to purchase the Ladder on the basis of representations made by QVC regarding the Ladder's safety and quality. QVC, according to the Greens, intended for Mrs. Green (and other customers) to rely on its representations of safety and quality, but knew, or should have known, of the alleged defect. QVC moves for judgment as a matter of law on the ground that Mrs. Green cannot identify any specific statements allegedly made by QVC on which she relied. Alternatively, even if the alleged statements are sufficiently specific to sustain a claim of misrepresentation, QVC argues that the statements are "mere puffery." No reasonable buyer would rely on such statements, thus QVC asserts that it is entitled to partial summary judgment as to Count IV.

In Maryland, a plaintiff must satisfy the following five elements to establish a negligent misrepresentation claim:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;

---

[6] This Court notes that, although Plaintiffs do not identify whether Count IV asserts intentional or negligent misrepresentation, the accompanying allegations sound in negligence.

> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982). A plaintiff acts justifiably in reliance on the defendant's statement only if that statement involves the representation of a material fact. *Ward Development Co., Inc. v. Ingrao*, 493 A.2d 421, 426 (Md. 1985). A fact is material when "a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction in question," or if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Id.* (quoting Restatement (Second) of Torts, § 538 (1977)). Relatedly, a misrepresentation claim will fail if the statements in question are vague opinions, *Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. Ct. Spec. App. 1992), or mere puffery—statements "that are 'extravagant in scope and measure' and 'elusive in meaning,'" *Dierker v. Eagle Nat'l Bank*, 888 F. Supp. 2d 645, 652 (D. Md. 2012) (citing *Milkton v. French*, 150 A. 28, 32 (Md. 1930)).

QVC challenges only the sufficiency of the Greens' evidence under the first negligent misrepresentation prong—the presence of a false statement. In this case, Mrs. Green stated that she purchased the Ladder due to

> all the different things that [QVC representatives] said it would

7

> do, different positions, and you could use it with another ladder to make a platform. And they also said they had their quality control people check it out and that they found it to be safe and they did many – I forgot how many checks they said they do, but -- . . ."

Mrs. Green Dep. 32:20-33:5, ECF No. 60-1. She also visited QVC's website to read more information about the Ladder. *Id.* 30:8-32:5. Citing to *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 544 (S.D. W. Va. 2014), QVC contends that Mrs. Green's inability to recall the precise wording of the allegedly false statements, nor the dates or times on which she watched the program, strikes a fatal blow to Plaintiffs' claim of negligent misrepresentation. QVC's reliance on *Belville*, however, is misplaced. In *Belville*, the plaintiffs did not assert claims of negligent misrepresentation, but rather of fraud. Under Rule 9(b) of the Federal Rules of Civil Procedure, a fraud claim is subject to heightened pleading in which the plaintiffs must "state with particularity the circumstances constituting fraud . . ." *Belville*, 13 F. Supp. 3d at 543 (quoting Fed. R. Civ. P. 9(b)). Maryland law, however, does not require such specificity when asserting a claim of negligent misrepresentation. *See generally Martens Chevrolet, Inc.*, 439 A.2d at 539.

Moreover, during the course of discovery, Plaintiffs identified the specific dates, times, and statements made by QVC representatives. For example, the two QVC programs advertising the Ladder aired on April 5, 2009, hosted by QVC employees Leah Williams and Dan Willard, respectively. Paul Campbell Dep. 77-79, ECF No. 60-2. During the shows, the QVC employees and Wing Enterprises representatives repeatedly stated that the Ladder was "a very safe, secure ladder," and "a fantastic ladder, but more than anything else, it's a safe

8

one." Pls.' Resp. in Opp'n to Def. QVC's Mot. for Partial Summ. J. Regarding Count IV Ex. 3, 2-3, ECF No. 60-3 (Show Transcript). Indeed, the QVC employees and Wing Enterprises representatives noted the Ladder's stability, security, and safety as a point on which the Ladder could be distinguished from its competitors. *Id.* at 1-2. QVC also represented on its website that the Ladder was "built according to OSHA/ANSI standards of safety,"[7] among other claims. Campbell Dep. 122:17-20; *see also* Pls.' Resp. in Opp'n to Def. QVC's Mot. for Partial Summ. J. Regarding Count IV Ex. 4, ECF No. 60-4 (QVC Website Product Description). Far from being "mere puffery," these statements are capable of definition and not extravagant, empty boasts.

Given this evidence, the Plaintiffs have raised a genuine issue of material fact with respect to whether Mrs. Green relied on specific false statements regarding the Ladder's safety when she made the decision to purchase the Ladder. Even if Mrs. Green cannot recall the precise language used in the representations of safety and quality, she does recall watching the advertising programs and visiting QVC's website at some point between January and May 2009. QVC contends that allowing a jury to consider the circumstantial evidence revealed in discovery would amount to impermissible speculation. Yet, this argument ignores that juries consider circumstantial evidence every day when performing their fact-finding duties. Recasting the jury's core function as mere speculation does not

---

[7] "OSHA" refers to the Occupational Safety and Health Administration, which enforces safety and health legislation. Occupational Safety and Health Administration, http://www.osha.gov (last visited Nov. 19, 2015). "ANSI" refers to the American National Standards Institute, which oversees the development of safety standards for, *inter alia*, products, services, and processes in the United States. American National Standards Institute, http://www.ansi.org (last visited Nov. 19, 2015).

entitle QVC to judgment as a matter of law on Count IV. A genuine issue of material fact remains with respect to whether Mrs. Green relied on false statements made by QVC in purchasing the Ladder, QVC's Motion for Partial Summary Judgment Regarding Count IV is DENIED.

### B. QVC's Motion for Partial Summary Judgment—Count V

In Count V, the Greens allege that QVC violated the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301, *et seq.*, when it touted the safety and quality of the Ladder. QVC seeks partial summary judgment in its favor on three grounds. First, it contends that the Greens failed to establish any specific untrue statements made at specific times by specific persons. Second, QVC argues that, even if the Greens had made this showing, they lack sufficient evidence of Mrs. Green's reliance on any such statements. Third, QVC contends that there is no evidence that QVC had knowledge of the alleged defect. This Court will address each argument in turn.

The MCPA prohibits "unfair or deceptive trade practices"[8] in certain consumer

---

[8] Under the MCPA, "unfair or deceptive trade practices include any:

  (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
  (2) Representation that:
      i. Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;
      . . .
      iv. Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

Md. Code Ann., Com. Law §§ 13-301(1)-(2).

transactions, including the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services," and the "Offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services[.]" Md. Code Ann., Com. Law § 13-303(1)-(2). As the MCPA sounds in fraud, any claim must satisfy the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Marchese v. J.P. Morgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citing *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009)). Specifically, a plaintiff must allege the following elements:

> (1) The defendant made a false statement of fact;
> (2) The defendant knew the statement was false or acted with reckless disregard for the truth of the statement; the defendant made the statement for the purpose of defrauding the plaintiff;
> (3) The plaintiff reasonably relied on the false statement; and the plaintiff was damaged as a result.

*Thompson v. Countrywide Home Loans Servicing, L.P.*, Civ. A. No. BEL-09-2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens*, 439 A.2d at 537)). Given this heightened pleading standard, a MCPA claimant must identify the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Moreover, a plaintiff must allege not only that the defendant made a false or misleading statement, but also that the statement caused him an actual loss or injury. *See CitaraManis v. Hallowell*, 613 A.2d 964, 971 (Md. 1992) (holding that the MCPA requires proof of actual damages).

11

Mrs. Green's recollection of general statements of safety and quality are not sufficient to satisfy the heightened pleading requirement of Rule 9(b). Yet, as discussed *supra*, discovery revealed specific statements regarding the safety of the Ladder. Even under Rule 9(b), the particularity of this evidence is sufficient to establish the requisite "time, place, and contents" of the allegedly false statements. Further, Plaintiffs have raised a genuine issue of material fact whether Mrs. Green relied on the statements in question after watching the QVC advertisements and visiting the QVC website. The fate of this claim thus hinges on whether Plaintiffs have also generated a genuine issue of material fact regarding QVC's knowledge of the false statements or reckless disregard for the truth of the statements.

QVC does not independently test the products it promotes, instead relying on the seller of a product to submit documentation of the product's safety and quality. Campbell Dep. 89:20-90:4; 92:2-5. A seller representing that a product is safe must substantiate its claim with sufficient evidence. *Id.* 92:13-93:20. If the product had an "accident history," then QVC expected any seller "to be forthcoming with information like that." *Id.* 94:13-15. QVC would not ask the seller about the accident history, but rather "would expect [the seller] to volunteer information about the accident history of the product." *Id.* 94:13-18. By relying on the seller to volunteer any negative accident history rather than conducting an independent verification of the seller's claims, QVC is placing enormous trust in the good intentions of the seller. A genuine issue of material fact thus exists as to whether this trust was misplaced and QVC acted recklessly by conducting no independent inquiry into the product's accident history. Indeed, at least four individuals had contacted Wing Enterprises claiming injuries

resulting from the entrapment of their fingers in the exposed "V" of the Ladder prior to Mrs. Green's purchase. Harold Wing Dep. 29:17-48:8, ECF No. 62-11. As such, QVC's Motion for Partial Summary Judgment as to Plaintiff's Consumer Protection Claim is DENIED.

### C. QVC's Motion for Summary Judgment—Sealed Container Defense

Finally, QVC argues that the "sealed container" defense entitles QVC to summary judgment in its favor on all counts. Under Maryland law, the "sealed container" defense shields a seller from personal injury or property damage liability for a defective product if:

> (1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;
> (2) The seller had no knowledge of the defect;
> (3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;
> (4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and
> (5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

Md. Code Ann., Cts. & Jud. Proc. § 5-405(b). This defense is available, however, only to a seller who has not made "any express warranties, the breach of which were the proximate and substantial cause of the claimant's injury." Md. Code Ann., Cts. & Jud. Proc § 5-405(c)(6).

Even if QVC established each element of the sealed container defense, it made

13

certain express warranties that preclude its entitlement to this defense. Specifically, QVC represented, whether on its television programs or through its website, that the Ladder was a "perfect ladder," "a very safe, secure ladder," and "a fantastic ladder, but more than anything else, it's a safe one." Pls.' Resp. in Opp'n to Def. QVC's Mot. for Partial Summ. J. Regarding Count IV Ex. 3, at 2-3. QVC expressly claimed that the Ladder was "built according to OSHA/ANSI standards of safety." Campbell Dep. 122:17-20; *see also* Pls.' Resp. in Opp'n to Def. QVC's Mot. for Partial Summ. J. Regarding Count IV Ex. 4. These statements constitute express warranties in that they assure potential customers that the Ladder will be safe and is of a particular quality. *See McCarty v. EJ Korvette, Inc.*, 347 A.2d 253, 258 (Md. App. 1975) (explaining that an "affirmation that the tires are of such existing quality, capacity and condition" is an express warranty). Mr. Green suffered an injury when his thumb became entrapped in the alleged defect—the open "V" between the Ladder's main structure and the diagonal support rails—thereby breaching the express warranties of safety and quality. breached these express warranties of safety and quality. A reasonable jury could conclude that QVC made express warranties, the breach of which was the proximate and substantial cause of Mr. Green's injury. Accordingly, QVC's Motion for Summary Judgment Regarding Sealed Container Defense is DENIED.

## CONCLUSION

For the reasons stated above, Defendant QVC's Motion for Partial Summary Judgment Regarding Count IV (ECF No. 54) is DENIED; Defendant QVC's Motion for Partial Summary Judgment as to Plaintiffs' Consumer Protection Act Claim (ECF No. 55) is

DENIED; and Defendant QVC's Motion for Summary Judgment Regarding Sealed Container (ECF No. 56) is DENIED.

A separate Order follows.

Dated: November 20, 2015

\_\_\_/s/_____
Richard D. Bennett
United States District Judge