IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER GREEN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-1913 |
| WING ENTERPRISES, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This diversity action arises out of the "enhanced injury"[1] allegedly suffered by Plaintiff Christopher Green when using Defendant Wing Enterprises, Inc.'s product, the "Little Giant" ladder. Plaintiffs Christopher Green and Kathleen Green ("Plaintiffs" or the "Greens") assert five claims against Defendants Wing Enterprises, Inc. ("Wing Enterprises") and QVC, Inc. ("QVC") (collectively, "Defendants"), including a violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.*, and various tort and contract state law claims.[2] On November 20, 2015, this Court denied Defendant QVC's

---

[1] Under Maryland law, a manufacturer may be liable under strict liability or negligence theories for an "enhanced injury"—an injury stemming from a manufacturing or design defect where the defect did not cause the accident, but caused or "enhanced" the injury suffered. *See, e.g.*, *Volkswagen of America v. Young*, 321 A.2d 737 (Md. 1974). The underlying accident must be foreseeable to trigger "enhanced injury" liability. *See Nicholson v. Yamaha Motor Co., Ltd.*, 566 A.2d 135, 144-45 (Md. Ct. Spec. App. 1989) (applying the "crashworthiness" or "enhanced injury" doctrine to foreseeable accidents while riding a motorcycle).

[2] Plaintiffs' Complaint originally consisted of six claims: strict liability (Count I); negligence (Count II); breach of warranty (Count III); misrepresentation (Count IV); Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.* (Count V); and loss of consortium (Count VI). By Letter Order dated December 3, 2015, this Court confirmed that Plaintiffs voluntarily dismissed Count III. Order, ECF No. 79.

Motions for Partial Summary Judgment Regarding Count IV (ECF No. 54), Partial Summary Judgment as to Plaintiffs' Consumer Protection Act Claim (ECF No. 55), and Summary Judgment Regarding Sealed Container (ECF No. 56).

Currently pending is Defendants' Motion to Exclude Evidence and Plaintiffs' Expert Witness Testimony (ECF No. 45); Plaintiffs' *Daubert* Motion to Preclude Testimony of Defense Expert Thomas Bayer (ECF No. 46); and Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53). This Court held a hearing on the pending Motions on December 3, 2015.[3] For the reasons that follow, Defendants' Motion to Exclude Evidence and Plaintiffs' Expert Witness Testimony (ECF No. 45) is GRANTED IN PART and DENIED IN PART; Plaintiffs' *Daubert* Motion to Preclude Testimony of Defense Expert Thomas Bayer (ECF No. 46) is DENIED; and Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53) is DENIED. In sum, Plaintiffs' expert, Dr. Irving Ojalvo, and Defendants' expert, Thomas Bayer, are permitted to testify to the "Little Giant" ladder's compliance or non-compliance with the safety standards of the American National Standards Institute, as well as the factual predicate for their respective opinions. Dr. Ojalvo may not, however, testify to his proposed "safer alternative" as the proposal does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Further, Plaintiffs have raised a genuine issue of material fact as to their claim of strict

---

[3] At the hearing, counsel for both parties demonstrated to this Court how a user operates the "Little Giant" ladder.

2

liability, for they need not produce a "safer alternative" to sustain such a claim under Maryland law.

## BACKGROUND

The facts of this case remain as recounted in this Court's Memorandum Opinion of November 20, 2015. To summarize, this product liability action arises out of Mr. Green's fall and subsequent injury while using the "Little Giant" ladder (the "Ladder"), a product manufactured by Wing Enterprises. On May 4, 2009, Mrs. Green saw the Ladder advertised on QVC. Mrs. Green allegedly decided to purchase the Ladder due to the "demonstrations and representations QVC made concerning the Ladder and its alleged quality and safety." The Ladder arrived "new in the box" at the Greens' residence in Maryland shortly thereafter. The Greens allege, and Defendants do not dispute, that the Ladder arrived in the same condition as when it left Defendant Wing's control.

On August 27, 2011, Mr. Green used the Ladder to close a second-story window during a storm. He suddenly fell from the Ladder.[4] As he fell, Mr. Green's thumb became lodged at the point on the Ladder where the flared outer rail meets the straight inner rail, forcibly removing the thumb from his hand. After doctors determined that the thumb could not be reattached, they amputated Mr. Green's toe and fashioned it into an approximation of a thumb.

---

[4] Plaintiffs admit in their *Daubert* Motion to Preclude Testimony of Defense Expert Thomas Bayer (ECF No. 46) that, due to insufficient information, they do not assert that the *Ladder* caused Mr. Green's fall. Mem. in Supp. of Pls.' *Daubert* Mot., 3, ECF No. 46-1.

Plaintiffs subsequently filed this "enhanced injury" product liability action,[5] arguing that the Ladder manufactured by Wing Enterprises and sold by QVC was defective and unreasonably dangerous. As an "enhanced injury" suit, Plaintiffs do not allege that Mr. Green's fall caused the injuries in question. Rather, the Greens contend that Mr. Green suffered a secondary injury—the amputation of his thumb—due to the unreasonably dangerous nature of the Ladder. Specifically, the Greens assert that the open "V" between the Ladder's central structure and the diagonal support arms constitutes a design defect.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Although not chronological, this Court will first address Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53). This Court notes that, in ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

A. **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[5] At the December 3, 2015 hearing, Defendants contested Plaintiffs' claim that this action is an "enhanced injury" case. As is well established, the plaintiff is the master of his complaint and thus may decide the theory under which his claims will proceed. *See, e.g., United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405-406 (4th Cir. 2013) ("The primacy of the complaining party is reflected in the legal vernacular."). In this case, Plaintiffs expressly alleged that Mr. Green suffered an "enhanced injury." Compl. ¶ 8, ECF No. 1. Despite Defendants' arguments to the contrary, this case will proceed under Plaintiffs' specified theory of injury.

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). In so doing, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

**B. Analysis**

The Greens assert in Count I that, due to an unreasonably dangerous defect in the

5

design of the Ladder, Defendants are strictly liable under Maryland law. Defendants now move for partial summary judgment on the ground that Plaintiffs cannot establish a "safer alternative" design, as required by the "risk/utility" test.[6] The risk/utility test, however, does not apply to Plaintiffs' strict liability claim. The Greens are thus under no obligation to provide a "safer alternative" to establish this claim.[7]

Maryland law did not provide for recovery under the theory of strict liability until 1976, when the Maryland Court of Appeals in *Phipps v. General Motors Corp.*, 363 A.2d 955 (Md. 1976) expressly adopted the doctrine of strict liability in tort articulated by Restatement (Second) of Torts § 402A. In *Phipps*, the plaintiff sought to recover for injuries sustained from a design defect in her automobile's accelerator. The *Phipps* Court set forth the following "essential elements" for recovery:

> it must be established that (1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

363 A.2d at 958. Although the *Phipps* Court did not give a specific name to its adopted test, the test is "today [known] as the 'consumer expectation' test." *Ruark v. BMW of North America, LLC*, Civ. A. No. ELH-09-2738, 2014 WL 1668917, *4 (D. Md. Apr. 24, 2014).

Of critical importance to this claim are the requirements that the product "must be both in a 'defective condition' and 'unreasonably dangerous' at the time that it is placed on

---

[6] *See* discussion *infra* as to both the consumer expectation test and the risk/utility test.
[7] The parties agree, however, that the risk/utility test clear applies to Plaintiffs' negligence claim (Count II). *See* Correspondence re: *Daubert* Motion, 2, ECF No. 77.

the market by the seller." *Phipps*, 363 A.2d at 959. A product is in a "defective condition" when it is in a "condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402A cmt. g; *see also Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002). Further, an "unreasonably dangerous" product is one that is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A cmt. i; *see also Phipps*, 363 A.2d at 959.

In this case, the Greens explicitly claim injury resulting from a design defect in the Ladder—specifically, that Mr. Green's thumb was severed after becoming lodged in the open "V" between the Ladder's central structure and the diagonal support arms. As the "V" is an integral component of the structure of the Ladder, this alleged defect existed at the time it left the control of both Wing Enterprises and QVC. The Ladder then arrived at the Greens' residence "new in the box," and thus underwent no alleged alteration. Moreover, Plaintiffs have raised a genuine issue of material fact that the product was in a defective condition and unreasonably dangerous. An ordinary consumer could reasonably expect to fall from the Ladder, but he could not reasonably expect that his thumb (or other body part) could become entrapped in the "V" and severed from his body.

Defendants, however, urge this Court to apply the risk/utility test to the Greens' strict liability claim, and not the consumer expectation test applied above. The risk/utility test "regards a product as defective and unreasonably dangerous, for strict liability purposes,

7

if the danger presented by the product outweighs its utility." *Halliday*, 297 A.2d at 1150. This test demands that the plaintiff establish a "feasible, safer alternative design" that would have "reduced or avoided" the foreseeable risks of injury. *Lloyd v. General Motors Corp.*, 275 F.R.D. 224, 226 (D. Md. 2011). Stemming from Defendants' objections under *Daubert*, they argue that Plaintiffs have failed to produce a "safer alternative" that could reduce or avoid the risk of Mr. Green's injury.

Yet, the risk/utility test does not apply to strict liability claims based on a design defect. As this Court recently explained in *Ruark*, 2014 WL 1668917 at *6, Maryland law instead employs the consumer expectation test to such claims. Indeed, as Judge Hollander of this Court noted in *Ruark*, in the three cases in which the Maryland Court of Appeals considered the appropriate standard for a design defect strict liability claim, "all three times, it adopted the consumer expectation test." *Id.* The risk/utility test, in contrast, does not apply to a claim for strict liability unless the product malfunctions. *Id.*; *see also Parker v. Allentown, Inc.*, 89 F. Supp. 2d 773, 791 (D. Md. 2012) (explaining that the "risk/utility test applies when something goes wrong with the product") (internal quotation marks omitted).

The Greens do not allege that the Ladder malfunctioned in any way. Rather, they contend that their alleged injuries resulted specifically from a defect in the design of the Ladder. As such, the consumer expectation test, and not the risk/utility test, applies. *Accord Ruark*, 2014 WL 1668917 at * 6 (holding that "a manufacturer's failure to include a safety device on a product is properly analyzed under the consumer expectation test."). The Greens are thus under no obligation to establish a "safer alternative design" to establish a claim

8

under Count I. Accordingly, Defendants are not entitled to partial summary judgment as to Plaintiffs' strict liability claim.

## *DAUBERT* MOTIONS

Next, this Court turns to the parties' competing motions under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Defendants seek to exclude the testimony of Plaintiffs' expert, Dr. Irving Ojalvo ("Dr. Ojalvo"), regarding a proposed "safety insert" devised by Dr. Ojalvo.[8] In response, the Greens assert the reliability of Dr. Ojalvo's "safety insert," and also move to exclude the testimony of Defendants' expert, Thomas Bayer ("Mr. Bayer"), regarding the cause of Mr. Green's accident.

### A. Standard of Review

Rule 702 of the Federal Rules of Evidence governs expert testimony. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 587-88. Under Rule 702, a qualified expert may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Rule 702 instructs the trial judge to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The party seeking to introduce an expert

---

[8] In their Motion to Exclude Evidence and Plaintiffs' Expert Witness Testimony, Defendants originally sought to exclude the entirety of Dr. Ojalvo's testimony. At the December 3, 2015 hearing, however, Defendants limited their argument to the exclusion of Dr. Ojalvo's testimony regarding the proposed safety insert. Defendants acknowledged that, even if the testimony in question is excluded, Dr. Ojalvo could testify to the Ladder's compliance (or non-compliance) with ANSI standards and whether the Ladder was unreasonably dangerous.

opinion must "establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

This Court balances two competing principles when considering whether to admit expert testimony. On the one hand, Rule 702 permits a more liberal introduction of expert evidence in accord with the adversarial nature of the court, where "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. On the other hand, "courts must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gisvaled Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).

To balance these competing principles, this Court "conduct[s] a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The United States Supreme Court has identified several factors to be considered, including:

> (1) whether a theory or technique can be or has been tested;
> (2) whether it has been subjected to peer review and publication;
> (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and
> (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper*, 259 F.3d at 199 (citing *Daubert*, 509 U.S. at 592-94). The factors are "neither definitive, nor exhaustive," but instead depend on the particular facts of the case. *Cooper*, 259 F.3d at 199-200 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). As such, the court enjoys "broad latitude" when determining the admissibility of expert opinions. *Kumho*, 526 U.S. at 153.

B. Analysis

    i.   **Defendants' Motion to Exclude**

Defendants seek to exclude Dr. Ojalvo's testimony regarding a proposed safety insert that, Dr. Ojalvo testifies, would have prevented Mr. Green's injuries. Although not relevant to the strict liability claim of Count I, a "safer alternative design" is relevant to Plaintiffs' negligence claim in Count II.[9] Defendants contend that the proposed safety insert, which consists of a triangular plastic "flap" that would cover the exposed "V" between the Ladder's central structure and its diagonally flared arms, has neither been tested nor subjected to peer review of any kind. Moreover, Dr. Ojalvo has not submitted the proposed alternative to the American National Standards Institute or any governmental body, nor have any other ladder manufacturers implemented the insert. Rather, this Court and the jury are expected to accept the reliability of the proposed safety insert solely on the basis of Dr. Ojalvo's qualifications.[10]

---

[9] As discussed *supra*, this Court rejected Defendants' argument that the risk/utility test, of which an "safer alternative design" is a component, applies to the strict liability claim of Count I. Testimony regarding a proposed "safer alternative design" is thus relevant only to the negligence claim of Count II.

[10] The parties agree that Dr. Ojalvo is eminently qualified—among other credentials, he is a voting member

11

The Greens do not dispute that Dr. Ojalvo's proposed safety insert was not subjected to peer review or testing, nor considered by ANSI or another relevant institution. Citing to *Johnson v. Int'l Harverster Co.*, 702 F.2d 492 (4th Cir. 1983), the Greens argue that Dr. Ojalvo's use of widely-accepted techniques and methodologies in designing the insert is sufficient to satisfy *Daubert* and Rule 702. Such use, however, does not establish the reliability of the safety insert for purposes of this case.

Without any testing or peer review, this Court simply cannot evaluate the unintended consequences of the proposed safety insert. As Defendants' counsel stated during the *Daubert* hearing, the insert could certainly have prevented Mr. Green's specific injury—the entrapment and subsequent severing of his thumb. It is unclear, however, whether the safety insert would protect from or enhance injuries in other cases. A jury could assume that the proposed safety insert could resolve all risks associated with the exposed "V," yet without testing or peer review, this assumption is based solely on the opining of Dr. Ojalvo. Although Dr. Ojalvo is clearly qualified to testify to the safety of the Ladder and whether it conforms to ANSI standards, this Court is not prepared to accept his proposed safety insert absent any testing or peer review.

Moreover, Plaintiffs' reliance on *Johnson* is misplaced in the context of admissibility under *Daubert*. In *Johnson*, the United States Court of Appeals for the Fourth Circuit held that the plaintiff's proposed safer alternatives that were "relatively simple ideas" that "could be

---

of the American National Standards Institute ("ANSI") Ladder Safety Committee. Resp. in Opp'n to Defs.' Mot. to Exclude Ex. 2, ECF No. 59-2 (*curriculum vitae* of Dr. Ojalvo).

weighed on the basis of inference and common knowledge of the jury." 702 F.2d at 496. The Fourth Circuit reached this conclusion, however, in the context of a sufficiency of the evidence determination, and not an analysis of admissibility of the expert opinion. Indeed, the Supreme Court did not issue its opinion in *Daubert* until ten years after *Johnson*. Even further, this Court is unable to conclude Dr. Ojalvo's proposed safety insert is a "relatively simple idea[]" with clear consequences that need not be tested or peer reviewed. As this Court remarked during the *Daubert* hearing, the proposed insert could hamper a user's ability to extend the Ladder while holding onto the vertical rails of the central structure. Although the insert could prevent Mr. Green's particular injuries, the unintended effects are ultimately unknown.

Exercising its role as gatekeeper, this Court will exclude Dr. Ojalvo's testimony regarding the proposed safety insert. Given the absence of testing, peer review, or general acceptance by industry governing bodies, the proposed insert is insufficiently reliable under Rule 702 and *Daubert*. Dr. Ojalvo is free to testify to the Ladder's compliance or non-compliance with ANSI standards, but he may not testify to the proposed safety insert.

    ii.   **Plaintiffs' Motion to Exclude**

Finally, the Greens move to exclude the testimony of Defendants' expert, Thomas Bayer, in its entirety. If permitted to testify, Mr. Bayer would express his opinions on two subjects: first, the cause of Mr. Green's fall from the Ladder, and second, whether the exposed "V" on the Ladder is a design defect that rendered the Ladder unreasonably

dangerous. The Greens, however, contend that, in this "enhanced injury" case, Rules 401 and 702 of the Federal Rules of Evidence prohibit Mr. Bayer's testimony regarding the cause of Mr. Green's fall as irrelevant. Even if the testimony is relevant to Plaintiffs' "enhanced injury" claims, the Greens nonetheless argue that the testimony is unreliable due to alleged inconsistencies and bias.

In an "enhanced injury" case, the plaintiff's asserted injuries stem from a defect in the product that caused or enhanced the injuries that the plaintiff could foreseeably incur from the accident itself. Given this distinction between the original accident and the "enhanced," or secondary, injuries, the Greens argue that any testimony concerning the cause of Mr. Green's fall is irrelevant. The Fourth Circuit reached a similar conclusion in *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 452-53 (4th Cir. 2001), holding that "evidence about the cause of the original accident is not relevant" in "crashworthiness" ("enhanced injury") cases. Although the *Jimenez* Court applied South Carolina law, the Maryland "enhanced injury" doctrine establishes the same distinction between the original accident and the enhanced injuries. *See Volkswagen*, 321 A.2d at 737. Evidence about the cause of the original accident—Mr. Green's fall— is thus arguably irrelevant to determining whether a defect existed that enhanced Mr. Green's injuries.

Yet, testimony regarding the cause of the original accident is relevant to the factual predicate upon which Mr. Bayer's other opinions are based. A jury cannot evaluate the credibility of his opinion that the Ladder is ANSI-compliant, and thus not unreasonably dangerous, if Mr. Bayer is not permitted to testify to the basis of that opinion. Indeed, in a

14

battle of the experts, the comparison of the facts upon which an opinion is based with the opinion itself is precisely the role of the jury.

Alternatively, the Greens argue that Mr. Bayer's testimony in unreliable due to inconsistencies in his opinion as to the cause of the original accident and alleged bias in favor of the Defendants. The adversarial nature of a trial, however, specifically guards against such alleged ills. Plaintiffs are free to subject Mr. Bayer to "[v]igorous cross-examination" and introduce evidence contrary to his testimony. *See Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The Greens may certainly question Mr. Bayer directly regarding their allegation that he testifies only for ladder manufacturers, as well as any alleged discrepancies in Mr. Bayer's analysis of the accident. As the gatekeeper, this Court must exclude expert opinions that it concludes are unreliable. It is the jury, however, on whom the duty falls to weigh the sufficiency and credibility of each party's evidence.

In sum, Mr. Bayer may testify to the factual predicate underlying his opinion that the Ladder is ANSI-compliant and, consequently, not unreasonably dangerous. This factual predicate may include his opinions regarding the cause of Mr. Green's accident, even if that evidence is not directly relevant to whether the Ladder contained a design defect that enhanced Mr. Green's injuries.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Exclude Evidence and Plaintiffs' Expert Witness Testimony (ECF No. 45) is GRANTED IN PART and DENIED IN PART; Plaintiffs' *Daubert* Motion to Preclude Testimony of Defense Expert Thomas Bayer (ECF No. 46) is DENIED; and Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Strict Liability Claim (ECF No. 53) is DENIED. In sum, Plaintiffs' expert, Dr. Irving Ojalvo, and Defendants' expert, Thomas Bayer, are permitted to testify to the "Little Giant" ladder's compliance or non-compliance with the safety standards of the American National Standards Institute, as well as the factual predicate for their respective opinions. Dr. Ojalvo may not, however, testify to his proposed "safer alternative" as the proposal does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Further, Plaintiffs have raised a genuine issue of material fact as to their claim of strict liability, for they need not produce a "safer alternative" to sustain such a claim under Maryland law.

A separate Order follows.

Dated: December 9, 2015                                    _____/s/_____
                                                          Richard D. Bennett
                                                          United States District Judge