IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER GREEN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-1913 |
| WING ENTERPRISES, INC., *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM ORDER

On December 9, 2015, this Court issued a Memorandum Opinion (ECF No. 80) and Order (ECF No. 81) granting in part and denying in part Defendants Wing Enterprises, Inc. and QVC, Inc.'s ("Defendants") Motion to Exclude Evidence (ECF No. 45); denying Plaintiffs Christopher and Kathleen Green's ("Plaintiffs" or the "Greens") *Daubert* Motion to Preclude Testimony (ECF No. 46); and denying Defendants' Motion for Partial Summary Judgment (ECF No. 53). In sum, this Court held that Plaintiffs' expert, Dr. Irving Ojalvo, and Defendants' expert, Thomas Bayer, are permitted to testify to the "Little Giant" ladder's compliance or non-compliance with the safety standards of the American National Standards Institute ("ANSI"), as well as the factual predicate for their respective opinions. Dr. Ojalvo, however, is precluded from testifying to his proposed "safer alternative," as this Court determined that the proposal did not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Finally, this Court held that Plaintiffs raised a genuine issue of material fact as to their claim

of strict liability, for they need not produce a "safer alternative" to sustain such a claim under Maryland law.

Defendants filed the pending Motion for Reconsideration, or in the Alternative, Certification to the Court of Appeals of Maryland (ECF No. 87) on February 3, 2016. Also pending are the parties' respective Responses Regarding Count II: Negligence (ECF Nos. 83, 84, & 85).[1] This Memorandum Order will address only Defendants' Motion for Reconsideration. For the reasons stated below, Defendants' Motion for Reconsideration, or in the Alternative, Certification to the Court of Appeals of Maryland (ECF No. 87) is DENIED. This Court will not certify a question to the Court of Appeals of Maryland and the jury trial will remain scheduled for April 4-8, 2016.

## BACKGROUND

The background facts of this action were fully set forth in this Court's Memorandum Opinion of December 9, 2016 (ECF No. 80). To summarize, this product liability action arises out of Mr. Green's fall and subsequent injury while using the "Little Giant" ladder (the "Ladder"), a product manufactured by Wing Enterprises. On May 4, 2009, Mrs. Green saw the Ladder advertised on QVC. Mrs. Green allegedly decided to purchase the Ladder due to the "demonstrations and representations QVC made concerning the Ladder and its alleged quality and safety." The Ladder arrived "new in the box" at the Greens' residence in Maryland shortly thereafter. The Greens allege, and Defendants do not dispute, that the Ladder arrived in the same condition as when it left Defendant Wing's control.

---

[1] After this Court excluded the testimony of Dr. Ojalvo on a proposed "safer alternative," the parties provided supplementary briefing on the impact of this ruling on Plaintiffs' claim for negligence. At issue is whether the "risk/utility" test, which applies to negligence claims under Maryland law, requires expert proof of a proposed "safer alternative."

On August 27, 2011, Mr. Green used the Ladder to close a second-story window during a storm. He suddenly fell from the Ladder. As he fell, Mr. Green's thumb became lodged at the point on the Ladder where the flared outer rail meets the straight inner rail, forcibly removing the thumb from his hand. After doctors determined that the thumb could not be reattached, they amputated Mr. Green's toe and fashioned it into an approximation of a thumb.

Plaintiffs subsequently filed this "enhanced injury" product liability action, arguing that the Ladder manufactured by Wing Enterprises and sold by QVC was defective and unreasonably dangerous. As an "enhanced injury" suit, Plaintiffs do not allege that Mr. Green's fall caused the injuries in question. Rather, the Greens contend that Mr. Green suffered a secondary injury—the amputation of his thumb—due to the unreasonably dangerous nature of the Ladder. Specifically, the Greens assert that the open "V" between the Ladder's central structure and the diagonal support arms constitutes a design defect.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration." Instead, Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, and Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). Rules 59(e) and 60, however, apply only to *final* judgments. *Saint Annes Development Co., Inc., et al. v. Trabich, et al.*, 443 F. App'x 829, 2011 WL 3608454, *3 (4th Cir. Aug. 17, 2011). When an order "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties[,] [the order] does not end the action as to any of the claims or parties . . ." Fed. R.

Civ. P. 54(b). As such, a "district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *American Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Although a district court *may* reconsider or modify its interlocutory rulings, such reconsideration is at the discretion of the court. *Id.* at 514-15. Indeed, such orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires." *Fayetteville Investors v. Comm. Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991) (quoting 7 *Moore's Federal Practice* ¶ 60.20)).

## **ANALYSIS**

Defendants fail to demonstrate that reconsideration of this Court's denial of partial summary judgment is warranted. The Greens assert in Count I that, due to an unreasonably dangerous defect in the design of the Ladder, Defendants are strictly liable under Maryland law. Defendants moved for partial summary judgment on the ground that Plaintiffs cannot establish a "safer alternative" design, as required by the "risk/utility" test.[2] This Court held that the "consumer expectation" test,[3] and not the "risk/utility" test, governs Plaintiffs' strict

---

[2] The risk/utility test "regards a product as defective and unreasonably dangerous, for strict liability purposes, if the danger presented by the product outweighs its utility." *Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002). This test demands that the plaintiff establish a "feasible, safer alternative design" that would have "reduced or avoided" the foreseeable risks of injury. *Lloyd v. General Motors Corp.*, 275 F.R.D. 224, 226 (D. Md. 2011).

[3] The consumer expectation test requires the following "essential elements" for recovery:

> it must be established that (1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Phipps v. General Motors Corp.*, 363 A.2d 955, 958 (Md. 1976).

liability claim. Under Maryland law, the consumer expectation test applies to strict liability claims in which the plaintiff alleges injury due to a design defect. *See, e.g.*, *Ruark v. BMW of North America, LLC*, Civ. A. No. ELH-09-2738, 2014 WL 1668917 (D. Md. Apr. 24, 2014). In contrast, the risk/utility test controls when the plaintiff alleges strict liability due to the malfunctioning of the product in question. *See, e.g.*, *id.*; *see also Parker v. Allentown, Inc.*, 89 F. Supp. 2d 773, 791 (D. Md. 2012) (explaining that the "risk/utility test applies when something goes wrong with the product") (internal quotation marks omitted). As the Greens alleged strict liability due to a design defect, they are under no obligation to provide a "safer alternative" to establish their claim.

In moving for reconsideration, Defendants simply reiterate their argument for partial summary judgment—an argument that this Court rejected in the Memorandum Opinion of December 9, 2015 (ECF No. 80). Alternatively, Defendants contend that Maryland law does not clearly support the application of either test, thereby necessitating the certification of this issue to the Maryland Court of Appeals. Yet, Maryland law engenders no such confusion. As Judge Hollander of this Court observed in *Ruark*, 2014 WL 1668917, at *6, in the three cases in which the Maryland Court of Appeals considered the appropriate standard for a design defect strict liability claim, "all three times, it adopted the consumer expectation test." *Id.* The consumer expectation test thus applies to strict liability claims in which the alleged defect is the manufacturer's failure to include a safety device in the design of the product. Further resolution of this issue by the Maryland Court of Appeals is unwarranted and unnecessary.

In sum, Defendants' Motion does not raise any serious question about the correctness of this Court's judgment. This Court will not reconsider its analysis, nor will a question to the Maryland Court of Appeals be certified.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Reconsideration fails to show that Defendants are entitled to relief. Accordingly, it is this 25th day of February, 2016, HEREBY ORDERED that:

1. Defendants' Motion for Reconsideration, or in the Alternative, Certification to the Court of Appeals of Maryland (ECF No. 87) is DENIED;

2. This Court will not certify a question to the Court of Appeals of Maryland;

3. A jury trial will remain scheduled for April 4-8, 2016; and

4. The Clerk of the Court transmit copies of this Memorandum Order to Counsel.

/s/  
Richard D. Bennett  
United States District Judge