IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER GREEN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-1913 |
| WING ENTERPRISES, INC., *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM ORDER**

On December 9, 2015, this Court issued a Memorandum Opinion (ECF No. 80) and Order (ECF No. 81) granting in part and denying in part Defendants Wing Enterprises, Inc. and QVC, Inc.'s ("Defendants") Motion to Exclude Evidence (ECF No. 45); denying Plaintiffs Christopher and Kathleen Green's ("Plaintiffs" or the "Greens") *Daubert* Motion to Preclude Testimony (ECF No. 46); and denying Defendants' Motion for Partial Summary Judgment (ECF No. 53). In sum, this Court held that Plaintiffs' expert, Dr. Irving Ojalvo, and Defendants' expert, Thomas Bayer, are permitted to testify to the "Little Giant" ladder's compliance or non-compliance with the safety standards of the American National Standards Institute ("ANSI"), as well as the factual predicate for their respective opinions. Dr. Ojalvo, however, is precluded from testifying to his proposed "safer alternative," as this Court determined that the proposal did not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Finally, this Court held that Plaintiffs raised a genuine issue of material fact as to their claim

of strict liability, for they need not produce a "safer alternative" to sustain such a claim under Maryland law.

After this Court excluded the testimony of Dr. Ojalvo on a proposed "safer alternative," the parties filed the pending Responses Regarding Count II: Negligence (ECF Nos. 83, 84, & 85) to address the impact of this ruling on Plaintiff's negligence claim. At issue is whether the "risk/utility" test, which applies to negligence claims under Maryland law, requires expert proof of a proposed "safer alternative." For the reasons stated below, partial summary judgment in favor of Defendants is DENIED. Although Dr. Ojalvo may not testify to *his* proposed "safer alternative," he may testify to the existence of any safer alternatives available in the market. Maryland law does not prohibit this testimony under the risk/utility test. Plaintiffs have succeeded in raising a genuine issue of material fact such that judgment as a matter of law is inappropriate. Accordingly, the jury trial, scheduled for April 4-8, 2016, will proceed on Counts I, II, IV, V, and VI.

## BACKGROUND

The background facts of this action were fully set forth in this Court's Memorandum Opinion of December 9, 2015 (ECF No. 80). To summarize, this product liability action arises out of Mr. Green's fall and subsequent injury while using the "Little Giant" ladder (the "Ladder"), a product manufactured by Wing Enterprises. On May 4, 2009, Mrs. Green saw the Ladder advertised on QVC. Mrs. Green allegedly decided to purchase the Ladder due to the "demonstrations and representations QVC made concerning the Ladder and its alleged quality and safety." The Ladder arrived "new in the box" at the Greens' residence in

Maryland shortly thereafter. The Greens allege, and Defendants do not dispute, that the Ladder arrived in the same condition as when it left Defendant Wing's control.

On August 27, 2011, Mr. Green used the Ladder to close a second-story window during a storm. He suddenly fell from the Ladder. As he fell, Mr. Green's thumb became lodged at the point on the Ladder where the flared outer rail meets the straight inner rail, forcibly removing the thumb from his hand. After doctors determined that the thumb could not be reattached, they amputated Mr. Green's toe and fashioned it into an approximation of a thumb.

Plaintiffs subsequently filed this "enhanced injury" product liability action, arguing that the Ladder manufactured by Wing Enterprises and sold by QVC was defective and unreasonably dangerous. As an "enhanced injury" suit, Plaintiffs do not allege that Mr. Green's fall caused the injuries in question. Rather, the Greens contend that Mr. Green suffered a secondary injury—the amputation of his thumb—due to the unreasonably dangerous nature of the Ladder. Specifically, the Greens assert that the open "V" between the Ladder's central structure and the diagonal support arms constitutes a design defect.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). If both parties have filed motions for summary judgment, then this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). Regardless, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

ANALYSIS

As a preliminary matter, the parties do not dispute that the "risk/utility" test applies to a claim for negligent design under Maryland law. *See, e.g.*, Correspondence re: *Daubert* Mot., 2, ECF No. 77. Rather, they disagree as to whether the risk/utility test requires expert

testimony on a proposed "safer alternative design."[1] The risk/utility test consists of seven factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Ziegler v. Kawasaki Heavy Industries, Ltd.*, 539 A.2d 701, 706-707 (Md. Ct. Spec. App. 1988), *abrogated on other grounds by Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1153 (Md. 2002); *see also Lloyd v. General Motors Corp.*, 266 F.R.D. 98, 108 (D. Md. 2010).

In moving for judgment as a matter of law on Count II, Defendants focus their argument on the third factor—the "availability of a substitute product which would meet the same need and not be as unsafe." They contend that expert testimony on a proposed "safer alternative" is necessary to succeed under the risk/utility test. As Dr. Ojalvo is no longer permitted to testify to his proposed "safer alternative," the plastic flap, Plaintiffs' negligence

[1] This Court notes that Plaintiffs also seek reconsideration of this Court's ruling excluding Dr. Ojalvo's testimony on his proposed "safer alternative." In support of reconsideration, Plaintiffs essentially reiterate their arguments offered at the *Daubert* hearing on December 3, 2015. Absent any new grounds for relief, this Court will not reconsider its *Daubert* holding. For the reasons set forth in the Memorandum Opinion of December 9, 2015, Dr. Ojalvo may not testify to his proposed "safer alternative."

claim must fail as a matter of law. Yet, Defendants offer no legal authority to support this precise position. Instead, Defendants' proffered authority establishes simply that expert testimony on the alleged defect or the causal relationship between the defect and a plaintiff's injury is required when "the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman." *Bond v. Nibco, Inc.*, 623 A.2d 731, 737 n.1 (Md. Ct. Spec. App. 1993); *see also Mohammed v. Toyota Motor Sales, U.S.A.*, 947 A.2d 598 (Md. Ct. Spec. App. 2008); *Harrison v. Bill Cairns Pontiac*, 549 A.2d 385 (Md. Ct. Spec App. 1988). Absent this expert testimony, a jury would inevitably engage in impermissible "surmise, conjecture, or speculation." *Mohammed*, 947 A.2d at 608 (citing *Woolley v. Uebelhor*, 211 A.2d 302, 305 (Md. 1965)).

Requiring expert testimony to establish a defect, however, does not necessarily imply that expert testimony is also required to establish a "safer alternative." Defendants' argument asks this Court to make that analytical leap, but provides no authority to support such a conclusion. The existence of a defect and whether a "safer alternative" is available are separate and distinct inquiries. Indeed, the "safer alternative" inquiry implicitly assumes the existence of a defect, as a product without any defects has no need of a "safer alternative." Plaintiffs contend that proof of a safer alternative is *not* essential to a negligence claim. *See Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773 (D. Md. 2012) (analyzing a negligent design claim without considering the availability of alternative designs). Nevertheless, Maryland law is silent on this precise question.

At the present time, this Court need not determine whether expert testimony is necessary to establish a "safer alternative." Although Dr. Ojalvo is precluded from testifying

to his *own* proposed "safer alternative," the plastic insert, he may testify to the presence of a defect and whether other "safer alternatives" exist. Plaintiffs intend to bolster their argument for a "safer alternative" with the testimony of Harold Wing, the president and majority shareholder of Defendant Wing Enterprises, Inc., and the testimony of Defendants' expert, Thomas Bayer. For example, Mr. Wing testified during his deposition that the open "V" served no design function. Pls.' Mem. Regarding Count II, 11, ECF No. 83. Plaintiffs argue that this admission demonstrates the feasibility of an alternative design without the offending open "V." Further, Mr. Bayer admitted that his former employer manufactured articulated ladders (like the Ladder) without the flared diagonal legs. *Id.* at 11-12. Plaintiffs thus contend that, not only are these competing ladders a "safer alternative," but they already exist in the marketplace. Given this evidence, Plaintiffs have raised a genuine issue of material fact that a "safer alternative" to the Ladder is available.

In sum, Defendants have failed to establish, as a matter of law, that Maryland requires expert testimony to prove the existence of a "safer alternative." Although Plaintiffs dispute that such a requirement exists, they nonetheless offer expert and non-expert evidence of a "safer alternative"—an articulated ladder without the flared diagonal arms. Critically, Defendants do not even attempt to rebut this evidence, or argue that such evidence fails to raise a genuine issue of material fact. Accordingly, Count II will proceed to trial.

## CONCLUSION

For the foregoing reasons, Defendants are not entitled partial summary judgment on Count II. Although Dr. Ojalvo may not testify to *his* proposed "safer alternative," he may testify to the existence of any safer alternatives available in the market. Maryland law does

not prohibit this testimony under the risk/utility test. Plaintiffs have thus succeeded in raising a genuine issue of material fact such that judgment as a matter of law is inappropriate. Accordingly, it is this 15th day of March, 2016, HEREBY ORDERED that:

1. Partial summary judgment in favor of the Defendants on Count II is DENIED;
2. A jury trial will remain scheduled for April 4-8, 2016 on Counts I, II, IV, V, and VI; and
3. The Clerk of the Court transmit copies of this Memorandum Order to Counsel.

/s/
Richard D. Bennett
United States District Judge